IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re: | ) | Chapter 11 |
| | ) | |
| RNI WIND DOWN | ) | |
| CORPORATION, et al., | ) | Case No. 06-10110 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## MEMORANDUM OPINION[1]

Before the Court is the Debtors' Motion for an Order
Pursuant to Rule 9019 of the Federal Rules of Bankruptcy
Procedure Approving the Amendment to the Stipulation and
Agreement of Settlement Dated as of November 12, 2004 (the "9019
Motion"), and the Motion of Charles L. Grimes for Relief from the
Automatic Stay Pursuant to 11 U.S.C. § 362 of the Bankruptcy Code
(the "Stay Relief Motion").  The 9019 Motion is opposed by
Charles L. Grimes and the Stay Relief Motion is opposed by the
Debtors, the Official Committee of Equity Security Holders, and
the Official Community of Unsecured Creditors.  For the reasons
stated below, the 9019 Motion will be granted and the Stay Relief
Motion will be denied without prejudice.

## I.    Factual and Procedural Background

This controversy arises from a series of derivative suits
that were filed between August 2002 and March 2004 in the

---

[1] This Opinion constitutes the findings of fact and conclusions of law of the
Court pursuant to Federal Rule of Bankruptcy Procedure 7052, which is made
applicable to contested matters by Federal Rule of Bankruptcy Procedure 9014.

Superior Court of California and the United States District Court for the Northern District of California (the "District Court") against Riverstone Networks, Inc. ("RNI") and its directors and officers.[2]  The derivative actions asserted claims against RNI's directors and officers for insider trading, breaches of fiduciary duty, abuse of control, gross mismanagement, corporate waste and unjust enrichment.  Specifically, plaintiffs alleged that between August, 2001 and December, 2002 the defendants realized that RNI could not achieve its revenue and earnings projections and conspired to create the "appearance" of growth during the relevant period by issuing false and/or misleading public statements regarding RNI's business, financial condition and prospects.

In May 2004, the plaintiffs in the derivative actions reached a settlement in principle with RNI and its directors and officers.   On November 12, 2004, all parties to the pending derivative actions entered into a Stipulation and Agreement of Settlement (the "Original Settlement").  The Original Settlement provided for the settlement of both the state court and District Court derivative actions.  The principle terms of the Original Settlement included changes to the number and independence of, members of the Board of Directors; the implementation of new

---

[2] On May 24, 2006, RNI changed its name to RNI Wind Down Corporation.  For convenience, "RNI" will be used throughout this opinion to refer to RNI Wind Down Corporation formerly known as Riverstone Networks, Inc., regardless of which formal name of the corporation was applicable at any given time.

corporate governance measures; and a payment of $11 million for the benefit of RNI.  Further, section 5.1 of the Original Settlement provides, in part, that "Riverstone agrees to pay . . . the fees and expenses of all experts retained by Derivative Plaintiffs' Counsel in an aggregate amount of $1,750,000, as a unitary part of the Settlement."  Original Settlement, at 14, § 5.1, ll. 14-18 (Nov. 12, 2005).

On January 26, 2005, the District Court granted preliminary approval of the Original Settlement, subject to objections from stockholders.  On May 2, 2005, Charles Grimes filed both a motion to intervene and an objection to the unitary nature of the payment of $1,750,000 for plaintiffs' attorneys' fees included in the Original Settlement.  On July 22, 2005, the District Court overruled Mr. Grimes' objection and entered an order granting final approval of the Original Settlement.  The District Court also dismissed the District Court derivative action with prejudice and granted Mr. Grimes' motion to intervene, giving him the right to appeal.

On August 11, 2005, Mr. Grimes filed his appeal with the United States Court of Appeals for the Ninth Circuit (the "Ninth Circuit").  Subsequently, the former derivative plaintiffs and defendants (the "Settlement Parties") agreed to unbundle the fee award from the Original Settlement, i.e., to strike the "unitary nature of the settlement," and filed a joint motion to dismiss

the Ninth Circuit appeal as moot, which the Ninth Circuit denied on March 17, 2006.  The appeal before the Ninth Circuit remains pending.

On February 7, 2006, RNI and its affiliates (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

On May 5, 2006, Mr. Grimes filed the Stay Relief Motion, seeking relief from the automatic stay to proceed with his Ninth Circuit appeal.[3]

On June 8, 2006, the Debtors filed the 9019 Motion.  Through the 9019 Motion, the Debtors seek to amend the Original Settlement in the following ways:

a. Deletion of the provision that makes granting the derivative plaintiffs' attorneys' fees and expenses "a unitary part of the settlement."

b. Derivative plaintiffs' counsel will repay to RNI's estate $950,000 of the $1,750,000 previously paid to them as attorneys' fees.  Those funds are to be transferred to RNI's estate within ten business days of this Court confirming the Debtors' pending plan of reorganization.  The transfer of those funds to RNI's estate is subject to refund of the full amount, plus

---

[3] The Debtors' commencement of Chapter 11 proceedings on February 7, 2006 stayed the appeal before the Ninth Circuit, pursuant to section 362 of the Bankruptcy Code.

4

interest, in the event of a reversal or modification of this Court's order confirming the Debtors' pending plan of reorganization.

c. The Debtors will bring a motion to approve the settlement amendment before this Court and file a motion to dismiss the Ninth Circuit Appeal.

This Court's approval of the Amendment to the Stipulation and Agreement of Settlement Dated as of November 12, 2004 (the "Amended Settlement") under Bankruptcy Rule 9019 is a condition to the effectiveness of the *Joint Plan of Reorganization and Liquidation Under Chapter 11 of the Bankruptcy Code Proposed by the Debtors, the Official Committee of Unsecured Creditors and the Official Committee of Equity Security Holders* (the "Plan") filed on June 30, 2006. A hearing on confirmation of the Plan is scheduled for September 12, 2006.

On June 30, 2006, the Court convened an evidentiary hearing on the 9019 Motion and the Stay Relief Motion.[4] At the conclusion of the hearing, the Court requested the submission of supplemental briefs in connection with the 9019 Motion, which were filed on July 24, 2006. On July 27, 2006, the Court heard oral argument in connection with the issues discussed in the

---

[4] Charles Grimes did not present any independent evidence in support of the Stay Relief Motion at the hearing on the motion.

supplemental briefs.   This is the Court's decision on the 9019 Motion and the Stay Relief Motion.

## II.   **The 9019 Motion**

Bankruptcy Rule 9019 provides that "[o]n a motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement."   Fed. R. Bankr. P. 9019(a).   Whether the Court may approve the Amended Settlement under Bankruptcy Rule 9019 is governed by well-settled principles of law and does not present a difficult issue in this case.

There are, however, three threshold issues that must be addressed before the Court may consider the merits of the Amended Settlement under Bankruptcy Rule 9019: (1) does the Bankruptcy Court have subject-matter jurisdiction over the Amended Settlement; (2) can the Court approve the Amended Settlement over the objection of Mr. Grimes, who is a party to the pending appeal before the Ninth Circuit but is not a party to the Amended Settlement; and (3) in light of the pending Ninth Circuit appeal, should the Court abstain from considering the 9019 Motion under principles of comity.

This Court finds that it has subject-matter jurisdiction to consider the Amended Settlement under Bankruptcy Rule 9019; Mr. Grimes is not a necessary party to the Amended Settlement; and the Court will not abstain from considering the 9019 Motion because principles of comity are not invoked and the standard for

permissive abstention is not satisfied. The Court further finds that the Debtors have satisfied the standard under Bankruptcy Rule 9019 and the Amended Settlement will be approved.

**A.   This Court Has Subject-Matter Jurisdiction Over the Amended Settlement**

The basic statutory grant of bankruptcy court subject-matter jurisdiction is contained in 28 U.S.C. § 1334. Specifically, section 1334(a) provides the district court with "original and exclusive jurisdiction of all cases under title 11." Section 1334(b) provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." Section 1334(e)(1) provides the district court in which a case under title 11 is commenced or is pending with "exclusive jurisdiction (1) of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate." *Compare Arbaugh v. Y&H Corporation dba The Moonlight Café*, ___ U.S. ___, 126 S.Ct. 1235, 1244, 163 L.Ed. 2d 1097, 1109 (2006) (setting forth the statutory bases for federal court subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1332).[5] The property of the estate referenced in section 1334(e)(1) is defined in 11 U.S.C. § 541 and includes "all legal and equitable

---

[5] 28 U.S.C. § 157(a) provides that the district court may provide that any and all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district. The United States District Court for the District of Delaware has so provided.

interests of the debtor in property . . . ." 11 U.S.C. §
541(a)(1)(2005).

Assuming the district court has subject-matter jurisdiction
under 28 U.S.C. § 1334 and the district court has referred the
matter to the bankruptcy court under 28 U.S.C. § 157(a), a
related question arises -- whether the matter before the
bankruptcy court is a core or non-core proceeding under 28 U.S.C.
§ 157(b). Importantly, 28 U.S.C. § 157(b) is **not** an independent
basis for conferring subject-matter jurisdiction to a bankruptcy
court. Rather, 28 U.S.C. § 157(b) delineates the scope of the
bankruptcy court's power to exercise the subject-matter
jurisdiction granted to the district court under 28 U.S.C. §
1334. Core proceedings include "matters concerning administration
of the estate" and "other proceedings affecting . . . the
adjustment of the debtor-creditor relationship." 28 U.S.C. §
157(b)(2)(A),(O)(2005). The consideration of the Amended
Settlement under Rule 9019 is a core proceeding.

The underlying cause of action at issue here is a derivative
action.

> Where a corporation has suffered an injury
> from actionable wrongs committed by its
> officers and directors, the remedy under a
> state's incorporation laws is a suit on
> behalf of the corporation. Such a suit may
> be brought by the corporation, or, in some
> circumstances, can be brought by the
> shareholders or creditors on its behalf.
> Regardless of who initiates the suit, the

>            recovery goes to the corporation.  When the
>            action is brought on behalf of the
>            corporation, it is referred to as a
>            derivative action.

*Reliance Acceptance Group, Inc. v. Levin (In re Reliance Acceptance Group, Inc.)*, 235 B.R. 548, 554 (D. Del. 1999).

Upon the filing of a bankruptcy petition, however, any claims for injury to the debtor from actionable wrongs committed by the debtor's officers and director become property of the estate under 11 U.S.C. § 541 and the right to bring a derivative action asserting such claims vests exclusively to the trustee. *Mitchell Excavators Inc. v. Mitchell*, 734 F.2d 129, 131 (2d Cir. 1984) (*citing Pepper v. Litton*, 308 U.S. 295, 306-07, 84 L. Ed. 281, 289-90, 60 S.Ct. 238, 245 (1939)). *See also Skolnick v. Atlantic Gulf Communities Corp.* (*In re Gen. Development Corp.*), 179 B.R. 335, 338 (S.D. Fla. 1995) ("[t]he bankruptcy estate includes all legal claims owned by [the] corporate debtor, including derivative actions. . . ."). This is true regardless of whether the derivative action is brought prior to or after the filing of the petition. *Compare Mitchell Excavators Inc.,* 734 F.2d at 130 (derivative action brought after filing of petition); and *Gen. Development Corp.*, 179 B.R. at 337 (derivative action brought prior to filing of petition).

Thus, the claims asserted by the plaintiffs in the derivative actions in this case are property of the estate under

section 541 of the Bankruptcy Code and, pursuant to 28 U.S.C. §
1334(e)(1), this Court has exclusive subject-matter jurisdiction
over those claims, including settlement of those claims.[6]

   This conclusion is not in dispute.    In his brief in
opposition, Mr. Grimes agreed that when a corporation files for
protection under the Bankruptcy Code, causes of action, including
derivative actions, become property of the estate.    Rather, Mr.
Grimes argues (without citation to authority) that the same is
not true with respect to an appeal of a court-approved settlement
of a derivative action because state law does not give the
corporation the right to assert that claim.

   Mr. Grimes' argument is without merit.    First, the fact that
the derivative actions have been settled and dismissed does not
divest this Court of subject-matter jurisdiction over the claims
for injury to the debtor.    Whether the trustee would ultimately
prevail on such claims in the face of a previously approved
settlement may be at issue, but the settlement and dismissal has
no effect on the bankruptcy court's subject-matter jurisdiction
over the claims.    Second, the fact that settlement and dismissal
of the derivative actions was followed by an appeal to the Ninth

---

[6] Because the trustee has the exclusive right to prosecute the derivative
actions, the trustee is the only party with the right to settle the actions.
*See, e.g., In Re Ontos*, No. 05-4773, 2006 U.S. Dist. LEXIS 4198 at *14 (D.N.J.
Jan. 4, 2006) ("it would be a strange and illogical interpretation of the law
that recognized on the one hand the exclusive right of the Trustee to
prosecute a fraudulent transfer claim, while on the other hand denying him the
power to settle or compromise that very same claim").

Circuit that is still pending does not change the analysis.  The bankruptcy court's subject-matter jurisdiction over the claims for injury to the debtor is based upon the claims themselves and not the procedural posture of the derivative actions asserting those claims.

The Court also finds the absence of authority in support of Mr. Grimes' argument significant.  As set forth above, the bankruptcy court's subject-matter jurisdiction over property of the estate, including claims for injury to the debtor, is created by statute.  *See* 11 U.S.C. § 1334(e)(1).  Similar authority is required to divest the bankruptcy court of its statutorily granted subject-matter jurisdiction based upon the procedural posture of the derivative actions.  No such authority exists and, thus, the subject-matter jurisdiction created by Congress remains intact. *See Arbaugh*, ___ U.S. ___, 126 S.Ct. at 1244, 163 L. Ed. 2d at 1110 (rather than constricting the scope of the federal court's subject-matter jurisdiction, the "sounder course" is to refrain from constricting the court's subject-matter jurisdiction and "to leave the ball in Congress' court").

### B. <u>Mr. Grimes is Not a Necessary Part to the Amended Settlement</u>

Mr. Grimes argues that the Court cannot approve the Amended Settlement over his objection because he is a party to the

pending appeal before the Ninth Circuit, but is not a party to the Amended Settlement.

Mr. Grimes incorrectly collapses the Amended Settlement into the pending appeal. The Debtors are not seeking to settle or to dismiss the pending appeal. Rather, they are seeking this Court's authority under Bankruptcy Rule 9019 to enter the Amended Settlement. While such approval may moot the pending appeal, the settlement or dismissal of the Ninth Circuit appeal is not before this Court.

What is before the Court is a proposed settlement of claims for injury to the debtor from actionable wrongs committed by the debtor's officers and directors, which were the subject of the derivative actions. As set forth above, upon the filing of a bankruptcy petition, those claims became property of the estate under 11 U.S.C. § 541 and the right to bring a derivative action asserting such claims vested exclusively to the trustee, including the right to settle such claims. As a result of the bankruptcy filing, even if Mr. Grimes had been the plaintiff in the derivative actions (which he was not) those claims could be settled over Mr. Grimes' objection. *Compare Ontos*, 2006 Lexis 4198, at *14 (because the trustee has the exclusive right to prosecute a fraudulent transfer claim, he also has the power to settle or compromise the same claim). Certainly, if the consent of the plaintiff in a derivative action is not required to settle

claims for injury to the debtor, Mr. Grimes is in no greater position to exercise a veto over the Amended Settlement.

Mr. Grimes argues that the Debtors cannot amend the Original Settlement without first having the District Court's decision approving the Original Settlement vacated.  He further argues that the Debtors do not meet the "exceptional circumstances standard" required for a court of appeals to grant *vacatur*.

Mr. Grimes cites *Teachers Insurance & Annuity Association v. Butler*, which stands for the proposition "that a bankruptcy court is precluded from relitigating judgments rendered by courts of competent jurisdiction . . . ."  803 F.2d 61, 66 (2d Cir. 1986). Debtors are not seeking to relitigate the derivative actions in this Court.  This Court is merely reviewing the validity of the Amended Settlement in the context of the 9019 motion.

Grimes also cites *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership*, 513 U.S. 18 (1994).  The issue in *Bancorp* is not on point to the case at hand.  In *Bancorp*, the issue on appeal was "whether appellate courts in the federal system should vacate civil judgments of subordinate courts in cases that are settled after appeal is filed or certiorari sought."  *Id.* at 19.

In *Bancorp*, the Supreme Court explained reasons behind the strict standards on post-judgments *vacatur*.  *Id.*

13

The Supreme Court reasoned that:

> [s]ome litigants, at least, may think it
> worthwhile to roll the dice rather than
> settle in the district court, or in the court
> of appeals, if, but only if, an unfavorable
> outcome can be washed away with settlement-
> related vacatur. And the judicial economies
> achieved by settlement at the district-court
> level are ordinarily much more extensive than
> those achieved by settlement on appeal.

*Id.* at 28 (emphasis omitted). Here, the Debtors previously settled the derivative actions in the District Court and are merely seeking an amendment of the Original Settlement. Therefore the concerns raised by the Supreme Court in *Bancorp* are not implicated in this case.

### C. This Court Will Not Abstain From Considering the 9019 Motion

The principle of comity is that "the courts of one state or jurisdiction will give effect to the laws and judicial decisions of another state or jurisdiction, not as a matter of obligation, but out of deference and mutual respect." *Brown v. Babbitt Ford, Inc.*, 571 P.2d 689, 695 (Ariz. Ct. App. 1977). The principle of comity applies among federal courts and requires federal courts of coordinate jurisdiction and equal rank to exercise care to avoid interference with each other's affairs. *West Gulf Maritime Association v. ILA Deep Sea Local 24, et al.*, 751 F.2d 721, 728 (5th Cir. 1985).

The principle of comity is not applicable in this case because the claims asserted by the plaintiffs in the derivative actions are property of the estate under section 541 of the Bankruptcy Code and, pursuant to 28 U.S.C. § 1334(e)(1), this Court has exclusive subject-matter jurisdiction over those claims, including settlement of those claims. As a result, this is not a case where two federal courts of equal rank are exercising coordinate or concurrent jurisdiction.

Nonetheless, this Court has authority under 11 U.S.C. § 1334(c)(1) in the interest of justice to abstain from hearing a particular proceeding arising under title 11 or arising or related to a case under title 11. Thus, notwithstanding that the principle of comity is not applicable in this case, the Court will consider whether it should abstain from considering the 9019 Motion.

"Permissive abstention from core proceedings under 28 U.S.C. § 1334(c)(1) is left to the bankruptcy court's discretion." *Luan Inv. S.E. v. Franklin 145 Corp.* (*In re Petrie Retail, Inc.),* 304 F.3d 223, 232 (2d Cir. 2002). Bankruptcy courts consider twelve nonexclusive factors to determine whether permissive abstention is appropriate:

> (1) the effect or lack thereof on the efficient administration of the estate; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the

> difficulty or unsettled nature of the
> applicable state law; (4) the presence of a
> related proceeding commenced in state court
> or other non-bankruptcy court; (5) the
> jurisdictional basis, if any, other than 28
> U.S.C. § 1334; (6) the degree of relatedness
> or remoteness of the proceeding to the main
> bankruptcy case; (7) the substance rather
> than the form of an asserted "core"
> proceeding; (8) the feasibility of severing
> state law claims from core bankruptcy matters
> to allow judgments to be entered in state
> court with the enforcement left to the
> bankruptcy court; (9) the burden of the
> court's docket; (10) the likelihood that the
> commencement of the proceeding in bankruptcy
> court involves forum shopping by one of the
> parties; (11) the existence of a right to a
> jury trial; and (12) the presence in the
> proceeding of nondebtor parties.

*In re Sun Healthcare Group*, 267 B.R. 673, 678-79 (Bankr. D. Del. 2000). "Evaluating the twelve factors is not a mathematical formula." *Id.* at 679.

In this case, factors (2), (3) and (8) do not apply as they pertain to issues of state law and comity with state courts that are simply not present in this case. Factor (5) does not apply because this Court's subject-matter jurisdiction arises under 28 U.S.C. § 1334. In addition, factors (9), (10) and (11) are inapplicable because this Court's docket is not burdened, there is no evidence of forum shopping and there is no right to a jury trial, respectively.

16

This leaves factors (1), (4), (6), (7), and (12) as the relevant factors for this Court to consider in determining whether it will abstain from considering the 9019 Motion.

   *(1)    The effect or lack thereof on the efficient administration of the estate.*

   Abstention would have an adverse impact on the efficient administration of the Debtors' estates.  The Plan has not yet been confirmed and approval of the Amended Settlement is an express condition to the effectiveness of the Plan, assuming, *arguendo*, the Plan is confirmed.  The confirmation hearing is scheduled for September 12, 2006.  Any further delay in resolving the issues raised by the 9019 Motion would have an adverse effect on the timely administration of this case.  Therefore, this factor does not favor abstention.

   *(4)    The presence of a related proceeding commenced in state court or other non-bankruptcy court.*

   The issue before this Court is the Debtors' 9019 Motion, which seeks approval of an Amended Settlement.  The issue before the Ninth Circuit is an appeal of the District Court's order approving the Original Settlement.  The issues stated on appeal by Mr. Grimes are

> 1) whether unitary settlements are permissible at all in derivative actions; 2) if unitary settlements are permissible, should a district court evaluate their fairness solely under the standards

applicable to ordinary settlement agreements,
or should it evaluate the attorneys' fee
provision pursuant to the stricter standard
normally applied in fee application cases;
and 3) if ordinary settlement agreement
standards are applicable, did the District
Court abuse its discretion by approving the
settlement agreement even though it found the
agreed fee exorbitant and unreasonable?

Opening Brief of Charles L. Grimes, No. 05-16588, at 2, filed in

the United States Court of Appeals for the Ninth Circuit (Nov.

23, 2005).

Both proceedings arise from the settlement of the claims

asserted in the derivative actions, however, the issues before

each court are separate and distinct. While both the 9019 Motion

and the issues on appeal were precipitated by the derivative

actions, the 9019 Motion does not directly involve the validity

of the Original Settlement or any of the issues presented to the

Ninth Circuit on appeal.  See also *Seguros del Estado, S.A. v.*

*Scientific Games, Inc.*, 262 F.3d 1164 (11th Cir. 2001).

While the approval of the 9019 Motion alters the underlying

facts of the Ninth Circuit Appeal, it does not change or

determine any of the legal issues that were raised on appeal.

Therefore, this factor does not favor abstention.

*(6) The degree of relatedness or remoteness of the proceeding to the main bankruptcy case.*

Consideration of the Amended Settlement through the 9019 Motion is a core proceeding and therefore related to the main bankruptcy case.  This factor does not favor abstention.

*(7) The substance rather than the form of an asserted "core" proceeding.*

This is a core proceeding.  This factor does not favor abstention.

*(12) The presence in the proceeding of nondebtor parties.*

While Mr. Grimes is a party to the appeal in the Ninth Circuit, his participation is not necessary for the Amended Settlement.  This factor does not favor abstention.

All of the relevant factors considered by bankruptcy courts in determining whether to abstain under 11 U.S.C. § 1334(c)(1) do not favor abstention.  Thus, it would not be in the interest of justice for this Court to abstain from considering the 9019 Motion and this Court will not do so.

D.   **The 9019 Motion Is Approved**

Bankruptcy Rule 9019 provides that "[o]n a motion by the trustee an after notice and a hearing, the court may approve a compromise or settlement."  Fed. R. Bankr. P. 9019(a).  "Four criteria that a bankruptcy court should consider . . . [are] (1) the probability of success in litigation; (2) the likely

19

difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996).

The Debtor clearly meets the standard under Rule 9019. As a preliminary matter, it is important to note that the Amended Settlement is an amendment to the Original Settlement previously approved by the District Court under the more stringent standards applicable to the settlement of a derivative action under Rule 23.1 of the Federal Rules of Civil Procedure. Moreover, the Amended Settlement results in an additional benefit to the Debtors' estates in the amount of $950,000. The Amended Settlement is significantly more favorable to the Debtors' estates than the Original Settlement previously approved by the District Court over Mr. Grimes' objection -- this fact alone weighs heavily in favor of approving the Amended Settlement.

Given the procedural posture of the pending appeal before the Ninth Circuit and the terms of the Amended Settlement it is somewhat difficult to apply the *Martin* factors. Nonetheless, to the extent the *Martin* factors are relevant, taken as a whole they favor approval of the Amended Settlement.[7]

---

[7] While the Amended Settlement is not a settlement of the Ninth Circuit appeal it will have an effect on that appeal by, in all likelihood, rendering it moot. Thus, the discussion of the *Martin* factors focuses almost exclusively on the Ninth Circuit appeal. Nonetheless, the Court reiterates that the issue before the Court is not the Ninth Circuit appeal but rather is the proposed settlement of claims for injury to the debtor from actionable wrongs committed

The first *Martin* factor is the probability of success in litigation.  In this case, this means the probability that the Original Settlement will survive the appeal before the Ninth Circuit.  It is quite possible that Mr. Grimes would be successful in his appeal before the Ninth Circuit.  If so, it is possible that the entire $1.75 million in attorneys' fees and not just $950,000 would be returned to the Debtors' estates.  Of course, if the approval of the Original Settlement by the District Court is affirmed by the Ninth Circuit, the entire $1.75 million in attorneys' fees would remain in the hands of the plaintiffs' attorneys.  Thus, the Courts finds that the return of approximately 54% of the attorneys fees previously approved by the District Court fairly and accurately reflects the possibility that the Original Settlement will be overturned on appeal.

The second *Martin* factor is the likely difficulty in collection.  In this case, this means the difficulty that the Debtors may face in collecting the $1.75 million in attorneys' fees in the event that the Original Settlement is overturned on appeal.  There would be little if any difficulty in collecting the $1.75 million in attorneys' fees in the event the Original Settlement is overturned on appeal and, thus, this factor weighs against approving the Amended Settlement.

---

by the debtor's officers and directors, which were the subject of the derivative actions.

The third *Martin* factor is the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it.  In this case, this means the complexity of the appeal before the Ninth Circuit and the expense, inconvenience and delay necessarily attending the appeal and any subsequent proceeding in the event that the Original Settlement is overturned on appeal.  This factor weighs heavily in favor of approving the Amended Settlement.

The final *Martin* factor is the interest of creditors. Generally speaking, adding $950,000 to a debtor's estate would inure to the benefit of a debtor's creditors.  In this case, however, under the proposed Plan, creditors are "in the money" by approximately $100 million.  Thus, an additional $950,000 in the Debtors' estates will have no effect on creditor recoveries in this case.

Nonetheless, the Court finds that this factor favors approving the Amended Settlement for two reasons.  First, there is a significant benefit that inures to the Debtors' creditors under the Amended Settlement other than the return of $950,000. Specifically, approval of the Amended Settlement is a condition to the effectiveness of the proposed Plan.  Under the proposed Plan, the Debtors' creditors will receive timely payment of their allowed claims in full in cash and, in some cases, with interest. Since approval of the Amended Settlement is a condition to the

receipt of those funds, the approval of the Amended Settlement is in the best interest of creditors.

Second, approval of the Amended Settlement also inures to the benefit of RNI's shareholders. Although in most bankruptcy cases there is little or no chance for payment to equity, this is not the case here. Although *Martin* does not specify that the interest of equity should be considered, the Court finds that in appropriate circumstances, *e.g.*, in a case where there is a likelihood of a recovery for equity, the Court can and should consider the interest of equity holders in applying the fourth *Martin* factor.

Thus, considered together, the *Martin* factors weigh in favor of this Court granting the 9019 Motion.

### III. **The Stay Relief Motion**

As discussed at length above, the claims asserted by the plaintiffs in the derivative actions are property of the estate under section 541 of the Bankruptcy Code. Pursuant to section 362(a) of the Bankruptcy Code, the filing of the Debtors' petitions for relief on February 7, 2006, operates as a stay, applicable to all entities, of "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). The automatic stay also applies to "the commencement

or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor." 11 U.S.C. § 362(a)(1).

Since the claims asserted in the derivative actions are property of the estate, and RNI is a party to the pending appeal in the Ninth Circuit, the automatic stay prevents Mr. Grimes from continuing his appeal. Mr. Grimes has filed the Stay Relief Motion, seeking relief from the automatic stay for "cause" to pursue his appeal.

Section 362(d) of the Bankruptcy Code provides that the Court shall grant relief from the automatic stay for "cause." 11 U.S.C. § 362(d)(1). In order to establish cause for relief under section 362(d)(1), "the party seeking relief from the stay must show that 'the balance of hardships from not obtaining relief tips significantly in [its] favor.'" *Atl. Marine, Inc v. Am. Classic Voyages, Co.* (*In re American Classic Voyages, Co.*), 298 B.R. 222, 225 (D. Del. 2003) (quoting *In Re FRG*, 115 B.R. 72, 74 (E.D. Pa. 1990).

Section 362(g) of the Bankruptcy Code provides that the party requesting relief from the automatic stay has the burden of proof on the question of the debtor's equity in property and that the party opposing relief has the burden on all other issues. 11 U.S.C. § 362(g). Nonetheless, the moving party first must establish its *prima facie* case. 3-362 *Collier on Bankruptcy* P 362.10 (Alan N. Resnick, Henry J. Sommer eds. 15th Ed. Rev.

24

2005).  Failure to prove a *prima facie* case requires denial of the requested relief.  *See Sonnax Industries, Inc. v. Tri Component Prods. Corp. (In re Sonnax Industries, Inc.)*, 907 F.2d 1280, 1285 (2d Cir. 1990) ("[s]ection 362(d)(1) requires an initial showing of cause by the movant . . . . If the movant fails to make an initial showing of cause, however, the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection."); *In re Eatman*, 182 B.R. 386, 390 (Bankr. S.D.N.Y. 1995) ("[w]hile section 362(g) allocates the burden of ultimate persuasion, under either ground, the movant must still make a prima facie showing that it is entitled to the relief that it seeks."); and *In re Elmira Litho, Inc.*, 174 B.R. 892, 902 (Bankr. S.D.N.Y. 1994).  A *prima facie* case requires a showing by the movant of "a factual and legal right to the relief that it seeks."  *In re Elmira Litho, Inc.*, 174 B.R. at 902.

In this case, the movant did not submit any evidence in support of its Stay Relief Motion.  Mr. Grimes filed the Declaration of Kathleen M. Miller In Support of Motion for Relief from Stay Pursuant to 11 U.S.C. § 363 of the Bankruptcy Code Filed by Charles Grimes [D.I. 351], which lists and attaches as exhibits several public documents previously filed in other proceedings.  Neither the Declaration nor the documents attached thereto, however, were moved into evidence at the hearing on the

25

Stay Relief Motion. Moreover, even if the documents attached to the Declaration had been admitted into evidence, they are insufficient to establish a *prima facie* case that cause exists to lift the automatic stay. Mr. Grimes failed to make a *prima facie* case by not establishing a factual and legal right to the relief he requests in the Stay Relief Motion and, thus, the motion is denied without prejudice.

### IV. <u>Conclusion</u>

For the reasons stated above, the Court will grant the 9019 Motion and will deny without prejudice the Stay Relief Motion.

An appropriate order is attached.


BY THE COURT:

Christopher S. Sontchi
United States Bankruptcy Judge


Dated:    August 23, 2006