IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re: | ) | Chapter 11 |
| | ) | Case No. 06-10110(CSS) |
| RNI WIND DOWN | ) | |
| CORPORATION, et al. | ) | |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | Related Doc. Nos. 650, 1307, 1317 |

**OPINION**[1]

Carl N. Kunz, III
Morris James LLP
500 Delaware Avenue, Suite 1500
P.O. Box 2306
Wilmington, DE 19899

Peter M. Gilhuly (Argued)
Robert W. Perrin
David D. Johnson
Latham & Watkins LLP
633 West Fifth Street, Suite 4000
Los Angeles, CA 90071

Attorneys for Andrew Feldman

Steven K. Kortanek
Womble Carlyle Sandridge
& Rice, PLLC
222 Delaware Avenue, Suite 1501
Wilmington, DE 19801

Emilio A. Galvan (Argued)
Brown Rudnick Berlack
Israels LLP
Seven Times Square
New York, NY 10036

William R. Baldiga
Brown Rudnick Berlack
Israels LLP
One Financial Center
Boston, MA 02111

Attorneys for the
Plan Administrator

Dated: July 9, 2007

---

[1] This Opinion constitutes the findings of fact and conclusions of law of the Court under Federal Rule of Bankruptcy Procedure 7052, which is made applicable to contested matters by Federal Rule of Bankruptcy Procedure 9014.

### Introduction

Before the Court is an objection to a claim of a former officer of the Debtors for indemnification and advancement of defense costs.  Through the objection, the Plan Administrator seeks to disallow the claim, pursuant to section 502(e)(1)(B) of the Bankruptcy Code, on the basis that the claimant is asserting a (i) contingent claim (ii) for reimbursement of a debt (iii) for which the Debtors are co-liable.  More specifically, the Plan Administrator argues that the claim is contingent because the amount of the claim is unknown and it is not possible to know whether the claimant will ultimately be entitled to indemnification.  In addition, the Plan Administrator argues that, regardless of whether the claim is considered one for indemnification or advancement, the claimant is seeking reimbursement.  Finally, the Plan Administrator argues that the Debtors and the claimant are co-liable to the government for the claimant's alleged wrongdoing.

While the Court agrees that the claim subject to the objection is for reimbursement, the Court finds that the Plan Administrator has failed to establish that the claim is contingent.  The fact that the amount of the claim is unknown establishes that the claim is unliquidated not that the claim is contingent.  Moreover, the possibility that the Plan Administrator may have a claim for return of some or all of the legal defense costs advanced to claimant if it is ultimately determined that claimant has no right to indemnification is insufficient, as a matter of law, to render the claim contingent.  Even if that were not the case, however, there is insufficient evidence before the Court to support a

finding in this case that the claimant will not be entitled to indemnification. Thus, the claim is not contingent.

The Plan Administrator has also failed to establish that the Debtors and the claimant are co-liable on the claim for which reimbursement is sought. Importantly, the claim subject to the objection is for attorneys fees incurred in connection with the investigation and defense of government civil and criminal prosecution. The Court finds, as a matter of law, that such claims are not subject to disallowance under section 502(e)(1)(B). Because the Plan Administrator has failed to establish all three elements under section 502(e)(1)(B), the claim is not subject to disallowance under that section.

As an alternative to disallowance, the Plan Administrator seeks to estimate the claim under section 502(c)(1) of the Bankruptcy Code because the fixing or liquidation of the claim would unduly delay the administration of the case. Estimation is not required in this instance because there is no evidence in the record to establish that the fixing or liquidation of the claim would result in undue delay. Moreover, the Court declines in this case to exercise its discretion to estimate a claim absent a threshold finding of undue delay.

Finally, before the Court is the Plan Administrator's motion in limine to preclude the admission into evidence of certain opinion testimony by a lay witness under F.R.E. 701. Because the Court is neither required nor inclined to estimate the claim, the motion in limine is moot.

## Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. Venue of this proceeding is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B) and (O).

## Statement of Facts

**Procedural Background**

On February 7, 2006 (the "Petition Date"), Riverstone Networks, Inc. ("RNI") and certain of its affiliates (collectively, the "Debtors") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.[2]

In June 2006, the Debtors filed the Joint Plan of Reorganization and Liquidation under Chapter 11 of the Bankruptcy Code Proposed by the Debtors, the Official Committee of Unsecured Creditors and the Official Committee of Equity Security Holders (the "Plan").  The Plan (as subsequently modified by the proponents) was confirmed by the Court in September 2006.  Pursuant to the terms of the Plan, Craig R. Jalbert was appointed as the Plan Administrator.

Andrew Feldman, a former officer of RNI, filed a timely proof of claim in the amount of $160,864.38 for his legal costs and fees as of April 30, 2006, plus future attorneys' fees and costs.  The official committee of equity security holders (the "Equity Committee") filed an omnibus objection to the claims of certain former officers and directors of the Debtors, including the claim of Mr. Feldman.

---

[2] Subsequently, Riverstone Networks, Inc. changed its name to RNI Wind Down Corporation.

Through the objection, the Equity Committee seeks to disallow Mr. Feldman's claim, pursuant to section 502(e)(1)(B), or, in the alternative, to estimate the claim, pursuant to section 502(c).  Upon his appointment, the Plan Administrator joined in the Equity Committee's objection to Mr. Feldman's claim.[3]

The Court held an evidentiary hearing on the objection to Mr. Feldman's claim in February 2007.  Prior to the hearing, the Plan Administrator filed a motion in limine to preclude the admission into evidence of the testimony of Mr. Feldman's attorney as to the amount of Mr. Feldman's claim, which the Plan Administrator argues is not admissible as opinion testimony by a lay witness under F.R.E. 701.  The Court allowed the testimony of Mr. Feldman's attorney at the hearing, subject to a ruling on the motion in limine.[4]  Following the hearing, the Court requested post-trial briefing, which is complete.  This matter is ripe for decision.

**General Background**

RNI is a Delaware corporation and is the direct or indirect parent of each of the other Debtors.  The Debtors' business was the development, marketing and sale of routers that telecommunications service providers use in providing voice, video and data service to customers.

---

[3] The Equity Committee was subsequently dissolved.  Thus, all further references are made solely to the Plan Administrator.

[4] In addition, the Plan Administrator filed a motion requesting that the Court take judicial notice of certain facts.  That motion was withdrawn during the evidentiary hearing as moot.

RNI completed its initial public offering in February 2001. In April 2003, RNI received an informal request from the Securities and Exchange Commission (the "SEC") for production of information relating to RNI's accounting practices concerning recognition of revenue and sale transactions. The SEC subsequently issued a formal order of investigation. In response, RNI began voluntarily cooperating with the SEC, commenced an internal investigation of its accounting practices and formed a special committee of the board of directors to oversee the internal investigation. Based upon the results of the investigation, RNI announced in July 2003 that investors should not rely on its historical financial statements and auditors' reports and that it intended to restate previously reported financial information. In addition, all employees believed to be involved in the suspect accounting practices, including Mr. Feldman, either resigned or were fired.

In October 2005, the SEC advised RNI that the SEC intended to bring a civil injunctive action against RNI. In response, RNI sent the SEC an offer of settlement in December 2005. Solely for purposes of the offer of settlement, RNI admitted that it failed to comply with section 13(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rules 13a-1 and 13a-13 thereunder by failing to file certain forms 10-K and 10-Q. Through the offer of settlement, RNI consented to entry of an order by the SEC revoking the registration of each class of RNI's securities registered pursuant to section 12 of the Exchange Act. RNI proposed

the settlement with the understanding that it would conclude all pending SEC matters against RNI.

In early 2006, RNI was informed by the SEC that it would consider the proposed settlement. On February 10, 2006 (three days after the Petition Date), the SEC entered an Order Instituting Proceedings, Making Findings, and Revoking Registration of Securities Pursuant to Section 12(j) of The Securities Exchange Act of 1934 through which the SEC accepted RNI's offer of settlement. The SEC has taken no further action against any of the other Debtors, including RNI.

On October 12, 2006, the SEC instituted a civil action in the Northern District of California against Mr. Feldman and several other former RNI employees relating to their work at RNI. The SEC is seeking, among other relief, civil penalties against Mr. Feldman.

In addition, there is an ongoing grand jury investigation being conducted by the United States Attorney's Office for the Northern District of California pertaining to RNI. The United States Attorney's Office for the Northern District of California and Mr. Feldman are parties to an agreement that is tolling the applicable statute of limitations as it pertains to Mr. Feldman.

**Indemnification and Advancement**

The By-laws of RNI in effect at the time of Mr. Feldman's employment provide for indemnification of the company's officers and directors, including Mr. Feldman, to the maximum extent permitted under the law. Similarly, the

Certificate of Incorporation of RNI in effect at the time of Mr. Feldman's employment provides for both the indemnification of the company's officers and directors to the maximum extent permitted under the law and the advancement of legal expenses to an officer or director upon receipt of an undertaking to repay all such amounts if it is ultimately determined that the officer or director is not entitled to indemnification.

In July 2004, in response to Mr. Feldman's request for advancement, RNI agreed to advance attorneys fees and costs to Mr. Feldman in connection with the investigation and defense of government civil and criminal prosecution.  As required under section 145 of the Delaware General Corporation Law ("DGCL") and RNI's certificate of incorporation, Mr. Feldman executed an undertaking to repay to RNI any amounts advanced to Mr. Feldman in the event that it is ultimately determined that he is not entitled to indemnification for such legal fees and expenses.

**Debtors' Bankruptcy**

As set forth above, the Debtors filed their Chapter 11 cases on the Petition Date.  The Court established various deadlines for creditors, including governmental units, to submit proofs of claim against the Debtors' estates.  Mr. Feldman timely filed a proof of claim.  Neither the SEC nor the Department of Justice (the "DOJ") filed a proof of claim in the Debtors' bankruptcy case prior to the government bar date, and no civil or criminal claim or penalty by neither the SEC nor the DOJ is mentioned in or provided for in the Plan.

The Court previously entered an order authorizing and approving the advancement of defense costs to certain present and former employees, including Mr. Feldman. Since entry of that order, the Debtors (and subsequently the Plan Administrator) have been honoring Mr. Feldman's request for advancement of fees. In connection with confirmation of the Plan, the Court entered an order approving a stipulation, which, among other things, created an aggregate reserve for advancement of defense costs and expenses of $20,000.000. The amount of this reserve dedicated to Mr. Feldman's costs and expenses was set at $4,513.951. Thus, Mr. Feldman's claim is effectively capped at approximately $4.5 million.

## Legal Discussion

**I.   Mr. Feldman's Claim Is Not Subject to Disallowance under Section 502(e)(1)(B) of the Bankruptcy Code.**

Section 502(e) of the Bankruptcy Code provides, in relevant part, that:

> (1) Notwithstanding subsections (a), (b), and (c) of this section and paragraph (2) of this subsection, the court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on or has secured the claim of a creditor, to the extent that—
>
> ***
>
> (B) such claim for reimbursement or contribution is contingent as of the time of allowance or disallowance of such claim for reimbursement or contribution.

11 U.S.C. § 502(e).

For a claim to be disallowed under section 502(e)(1)(B) of the Bankruptcy Code the claimant must assert a (i) contingent claim (ii) for reimbursement of a debt (iii) for which the debtors and the claimant are co-liable.  All three elements must be satisfied for the claim to be disallowed, *In re Pinnacle Brands, Inc.*, 259 B.R. 46, 55 (Bankr. D. Del. 2001), and the Plan Administrator has the burden of proof on each element.  *Juniper Dev. Group v. Kahn (In re Hemingway Trans., Inc.)*, 993 F.2d 915, 925 (1st Cir. 1993) (objecting party bears burden of submitting substantial evidence on each element under section 502(e)(1)(B)).  While the Court finds that Mr. Feldman's claim is for reimbursement, the Plan Administrator has failed to establish that Mr. Feldman is asserting a contingent claim for which the Debtors and Mr. Feldman are co-liable.  Thus, Mr. Feldman's claim is not subject to disallowance under section 502(e)(1)(B) of the Bankruptcy Code.

### (A)    Mr. Feldman's claim is for reimbursement.

The Plan Administrator argues that Mr. Feldman's claim is for indemnification and, thus, reimbursement.  Courts have consistently held that "the concept of reimbursement includes indemnity." *In re Vectrix Bus. Solutions, Inc.*, 2005 Bankr. LEXIS 1712 at *9 (Bankr. N.D. Tex. Sept. 1, 2005) (citing *In re Wedtech Corp.*, 85 B.R. 285, 289 (Bankr. SDNY 1988) ("*Wedtech I*")).  Indeed, in corporate law, indemnification is defined as the right of corporate officials "**to be reimbursed** for all out of pocket expenses and losses caused" by the legal proceedings.  *Majkowski v. Am. Imaging Mgmt. Svcs., LLC*, 913 A.2d 572, 586 (Del.

Ch. 2006) (emphasis added).   Thus, to the extent Mr. Feldman's claim is for

indemnification, it is subject to disallowance under section 502(e)(1)(B), provided

the other elements of the statute are met.

Nonetheless, Mr. Feldman argues that his claim is for advancement and

not for indemnification.    Mr. Feldman further argues that a claim for

advancement of legal expenses is not a claim for reimbursement.   Mr. Feldman is

correct that "[t]he statutory authorization for interim advancement of litigation

expense is distinct from the right to receive final indemnification under 145(a)

and (b) of the DGCL." *Kaung v. Cole Nat'l. Corp.*, 884 A.2d 500, 509 (Del. 2005).

The distinction is irrelevant for present purposes, however, because, regardless

of whether the claim is for advancement or indemnification, the claimant is

seeking reimbursement.

To reimburse is "to repay or make up to one (a sum expended)." XIII

OXFORD ENGLISH DICTIONARY, p. 534 (2nd ed. 2004).   To advance is "to pay

before it is legally due" or "to pay or lend on security . . . of future re-

imbursement." I OXFORD ENGLISH DICTIONARY, p. 182 (2nd ed. 2004).   Thus,

advancement precedes reimbursement and the meanings of the words appear, at

first blush, to be sufficiently distinct to support Mr. Feldman's argument.

Section 145(e) of the DGCL, which governs advancement, allows a

Delaware corporation to pay the "[e]xpenses (including attorney's fees) **incurred**

by an officer or director in defending any civil, criminal, administrative or

investigative action, suit or proceeding."  8 *Del.C.* § 145(e) (emphasis added).  *See*

11

*also Majkowski*, 913 A.2d at 580 (explaining advancement to be a "right whereby a potential indemnitee has the ability to force the company to pay his litigation expenses **as they are incurred** regardless of whether he will ultimately be entitled to indemnification.") (emphasis added). In this instance, "advancement" means the reimbursement of legal fees incurred by an officer or director in advance of the determination as to whether that officer or director is entitled to indemnification.

To paraphrase the court in *Wedtech I*, Mr. Feldman is seeking to be reimbursed for pecuniary loss arising from lawsuits in which he is named as a defendant. *Wedtech I*, 85 B.R. at 289. That Mr. Feldman seeks to do so by advancement (as opposed to waiting for indemnification) does not contradict the reimbursement nature of the claim. *Id.* Thus, regardless of whether the claim is considered one for indemnification or advancement, the claimant is seeking reimbursement.

### (B)    Mr. Feldman's claim is not contingent.

The Plan Administrator argues that Mr. Feldman's claim is contingent because the amount of the claim is unknown and it is not possible to know whether the claimant will ultimately be entitled to indemnification. "A claim is contingent where it 'has not yet accrued and . . . is dependent upon some future event that may never happen.'" *In re GCO Services, LLC*, 324 B.R. 459, 466 (Bankr. S.D.N.Y. 2005) (*quoting In the Matter of Provincetown-Boston Airlines, Inc.*, 72 B.R. 307, 310 (Bankr. M.D. Fla. 1987)). In order for this element to be satisfied, the

claim must be contingent on the date of the Court's ruling. *GCO Services*, 324 B.R. at 466.

At the time of the hearing on the claim objection, Mr. Feldman had incurred approximately $1 million in attorneys' fees and expenses and he continues to incur fees and expenses. The attorneys' fees are being paid by the Plan Administrator under the terms of RNI's certificate of incorporation and by-laws, section 145 of the DGCL and the order authorizing and approving the advancement of defense costs to Mr. Feldman. Mr. Feldman has waived his right to indemnification for any losses incurred as a result of the underlying claims other than for reimbursement of attorneys' fees and expenses.[5]

An unliquidated claim is a "claim in which the amount owed has not been determined." BLACK'S LAW DICTIONARY, p. 264 (8th ed. 2004). The fact that the exact amount of Mr. Feldman's claim cannot be determined at this time renders a portion of Mr. Feldman's claim as unliquidated. It does not, in itself, render the claim contingent.[6]

---

[5] Whether Mr. Feldman's attorneys' fees and expenses will ultimately exhaust the entirety of the $4.5 million reserve remains to be seen.

[6] The distinction between contingent and unliquidated appears throughout the Bankruptcy Code. *See, e.g.*, 11 U.S.C. § 101(5)(A) ("The term 'claim' means-- (A) right to payment, whether or not such right is reduced to judgment, liquidated, **unliquidated**, fixed, **contingent**, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured . . .") (emphasis added); 11 U.S.C. § 502(c)(1) ("There shall be estimated for purpose of allowance under this section-- (1) any **contingent or unliquidated** claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case.") (emphasis added); and 11 U.S.C. § 1111(a) ("A proof of claim or interest is deemed filed under section 501 of this title for any claim or interest that appears in the schedules filed under section 521(1) or 1106(a)(2) of this title, except a claim or interest that is scheduled as disputed, **contingent, or unliquidated**.") (emphasis added). *See also* 28 U.S.C. § 157(b)(2)(B) (Excluding from the bankruptcy court's core jurisdiction "the liquidation or estimation of **contingent or unliquidated** personal injury tort or wrongful

The Plan Administrator cites *In re Drexel Burnham Lambert Group Inc.*, 146 B.R. 98 (Bankr. S.D.N.Y. 1992) ("*Drexel I*") and *In re GCO Services, LLC*, 324 B.R. 459 (Bankr. S.D.N.Y. 2005), in support of his argument that Mr. Feldman's claim is contingent.  These two cases, however, support finding that Mr. Feldman's claim is unliquidated not contingent.  In *Drexel I*, the issue before the court was whether a joint tortfeasor eliminated the contingent nature of his claim for contribution against the debtor by settling the underlying third party dispute without the debtor's participation. *Drexel I*, 146 B.R. at 100.  The court held that while the joint tortfeasor had liquidated his claim for contribution against the debtor by settling with the third party, the claim for contribution remained contingent because there had been no judicial determination as to the degree of the debtor's liability. *Id*. at 101-2.  While the court rather loosely stated that joint tortfeasor's claim remained contingent because the "exact amount due is not fixed," the court was speaking in terms of the extent of the debtor's liability (if any) to the third party rather than in terms of the amount of the claim.  *Id*. at 102. The effect of the joint tortfeasor's settlement with the third party was to set the maximum amount of the debtor's liability and not to eliminate the contingent nature of the claim for contribution.

The claimants in *GCO Services* asserted claims against the debtors for indemnification or contribution under the Federal common law of ERISA. *GCO*

death claims against the estate for purposes of distribution in a case under title 11.") (emphasis added).

*Services*, 324 B.R. at 465.  Importantly, the court in *GCO Services* recognized the distinction between whether the claims were unliquidated or contingent. *Id*.  The claimants in *GCO Services* did not contest the fact that the claims were unliquidated because, unlike in *Drexel I*, the underlying claim of the third party had not been settled.  *Id*.  Moreover, the claimants admitted that the claims were contingent. *Id*.  Not surprisingly, the court held that the claims for contribution remained contingent. *Id*. at 466.

In this case, Mr. Feldman's claim has been capped at approximately $4.5 million and continues to be liquidated over time.  As in *Drexel I* and *GCO Services*, the issue of whether the claim is unliquidated (in whole or in part) is separate from whether the claim is contingent.  Moreover, Mr. Feldman's right to indemnification and advancement give rise to direct claims against the Debtors. *See AlTech Specialty Steel Corp. v. Allegheny Int'l., Inc. (In re Allegheny Int'l., Inc.)*, 126 B.R. 919, 922-3 (W.D. Pa. 1991).  As such, the claims are fundamentally different from claims for contribution (such as under CERCLA) where the liability itself does not arise unless and until the payment is made to the third party. *See In re APCO Liquidating Trust*, ___ Bankr. LEXIS ___ at *19 (Bankr. D. Del. June 29, 2007) (Claim against debtor for contribution under CERCLA is contingent even though liability of the debtor has been established because

claimant has not yet incurred costs, *i.e.*, the amount of the claim remains unknown). [7]

The crux of the Plan Administrator's argument is that Mr. Feldman's claim is contingent because it is not possible to know whether the claimant will ultimately be entitled to indemnification.  The Plan Administrator admits that Mr. Feldman is entitled to advancement.  Nonetheless, the Plan Administrator argues that the issue before the Court is whether Mr. Feldman will ultimately be entitled to indemnification.  Mr. Feldman's right to indemnification cannot be determined until after the merits of the underlying controversy are decided because it is "subject to a requirement that [he] has acted in good faith and in a manner that he reasonably believed was in the best interest of the company." *Majkowski*, 913 A.2d at 586.  Thus, the Plan Administrator argues the entirety of Mr. Feldman's claim is contingent.

The Plan Administrator cites to a number of cases in support of his argument.  *See Vectrix Bus. Solutions*, 2005 Bankr. LEXIS 1712 at *9; *GCO Services*, 324 B.R. at 466; *Drexel I*, 146 B.R. at 102; *Wedtech I*, 85 B.R. at 289; and *Provincetown-Boston Airlines*, 72 B.R. at 310.  None of the cases cited by the Plan Administrator, however, involve claims for advancement *and* indemnification by officers or directors.  As discussed above, the claimants in *GCO Services* asserted claims against the debtors for indemnification or contribution under the Federal

---

[7] Contribution is defined as the "right that gives one of several persons who are liable on a common debt the ability to recover ratably from each of the others **when that one person discharges the debt for the benefit of all**." BLACK'S LAW DICTIONARY, p. 352 (emphasis added).

common law of ERISA. *GCO Services*, 324 B.R. at 465.  Indeed, the court noted that the claims were more accurately described as claims for contribution rather than indemnification. *Id*.   In any event, the claimants had no right to seek advance payment and did not dispute that the claims were contingent. *Id*. at 466. Similarly, the claimant in *Drexel I* was asserting a claim under common law theories of contribution among joint tortfeasors arising from Drexel's actions as placement agent in connection with the issuance of certain bonds of a third party. *Drexel I*, 146 B.R. at 100.

The remaining cases are somewhat more analogous to this case.   The claimants in *Wedtech I* were former directors of the debtor, who had been named as defendants in civil and criminal actions relating to their service as corporate officers of the debtor.  *Wedtech I*, 85 B.R. at 287-8.  The claimants asserted their rights to indemnification under the debtor's by-laws. *Id*. at 288-9.  The claimants either did not seek or had no right to advancement of their legal expenses.  The court held that the claim for indemnification was contingent because the underlying liability of the debtor and the claimants had not yet been determined. *Id*. at 289.

The claimant in *Provincetown-Boston Airlines* asserted a claim for indemnification or contribution by the debtor relating to the claimant's actions as lead underwriter for issuance of the debtor's stock. *Provincetown-Boston Airlines*, 72 B.R. at 308.  The claimant's right to indemnification arose from the terms of the underwriting agreement. *Id.*  As in *Wedtech I*, the claimant in *Provincetown-*

*Boston Airlines* either did not seek or had no right to advancement of its legal expenses. The court held that, unless and until the liability of the debtor and the claimants was established, the claim for indemnification remained contingent. *Id.* at 310.

Finally, the claimant in *Vectrix Bus. Solutions* was the debtor's former chief executive officer, president and chairman of the board, who had been named as a defendant in two civil actions. *Vectrix Bus. Solutions*, 2005 Bankr. LEXIS at *1-2, 5. The claimant asserted his right to indemnification under the debtor's articles of incorporation. *Id.* at *4-5. Although the claimant also had the right to advancement of his legal defense costs, he did not post the required undertaking. *Id.* at *5. The court held that because the underlying liability of the debtor and the claimant had not been determined as of the date of the filing of the bankruptcy, the claim for indemnification was contingent. *Id.* at *9.

An understanding of Mr. Feldman's indemnification *and* advancement rights, however, is critical in determining whether his claim is contingent. Indemnification and advancement are distinct but related concepts. *Kaung,* 884 A.2d at 509. The Plan Administrator's sole focus on indemnification (as well as Mr. Feldman's sole focus on advancement) improperly ignores the relationship between Mr. Feldman's rights to indemnification and advancement.

"Section 145 of the DGCL vests Delaware corporations with the capacity to protect their present and former corporate officials from expenses incurred in connection with litigation and other legal proceedings." *Id.* at 508-9. "[It]

expressly contemplates protection for corporate officials from the risks of legal proceedings not only by way of reimbursement (*i.e.*, indemnification) but also by the pre-indemnification advancement of certain litigation related expenses." *Id*. at 509.

"Indemnification is the right to be reimbursed for all out of pocket expenses and losses caused by the underlying claim." *Majkowski*, 913 A.2d at 586. "The right is typically subject to a requirement that the indemnitee [has] acted in good faith and in a manner that he reasonably believed was in the best interest of the company." *Id*. "As a result, an indemnification dispute generally cannot be resolved until after the merits of the underlying controversy are decided because the good faith standard requires a factual inquiry into the events that gave rise to the lawsuit." *Id*.[8]

RNI's by-laws and certificate of incorporation both provide for the indemnification of the company's officers and directors to the "maximum extent permitted under the General Corporation Law of the State of Delaware."  Under section 145(a) of the DGCL, Mr. Feldman will be entitled to indemnification if he "acted in good faith and in a manner [he] reasonably believed to be in or not opposed to the best interests of the corporation, and, with respect to any criminal

---

[8] The "invariant policy" on indemnification is to promote "corporate officials [to] resist what they consider unjustified suits and claims, secure in the knowledge that their reasonable expenses will be borne by the corporation they have served if they are vindicated." *Stifel Fin. Corp. v. Cochran,* 809 A. 2d 555, 561 (Del. 2002) (citation omitted).  The broader purpose is "to encourage capable [persons] to serve as corporate directors, secure in the knowledge that expenses incurred by them in upholding their honesty and integrity as directors will be borne by the corporation they serve." *Id*. (citation omitted).  The Delaware Supreme Court has emphasized that section 145 of the DGCL should be broadly interpreted to further the goals it was enacted to achieve. *Id*.

action or proceeding had no reasonable cause to believe [his] conduct was unlawful." 8 *Del.C.* §145(a).

While a determination as to whether a corporate officer is entitled to indemnification must await the outcome of the underlying controversy, "[a]dvancement, by contrast, is a right whereby a potential indemnitee has the ability to force the company to pay his litigation expenses as they are incurred regardless of whether he will ultimately be entitled to indemnification." *Majkowski*, 913 A.2d at 586. "Advancement is typically not conditioned on a finding that the party seeking advancement has met any standard of conduct." *Id.* The only proviso is that the officer must undertake to repay all monies advanced to him if it is later determined that he is not entitled to indemnification. 8 *Del.C.* § 145(e). *See Homestore, Inc. v. Tafeen*, 888 A. 2d 204, 211 (Del. 2005) ("If it is subsequently determined that a corporate official is not entitled to indemnification, he or she will have to repay the funds advanced."). "A grant of advancement rights is essentially a decision to advance credit to the company's officers and directors because the officer or director must repay all sums advanced to him if it is later determined that he is not entitled to be indemnified." *Majkowski*, 913 A.2d at 587. "Advancement is an especially important corollary to indemnification as an inducement for attracting capable individuals into corporate service . . . [by] provid[ing] corporate officials with immediate interim relief from the personal out-of-pocket financial burden of

paying the significant on-going expenses inevitably involved with investigations and legal proceedings." *Homestore, Inc.*, 888 A.2d at 211.

Under RNI's certificate of incorporation, the company is required to pay the "expenses incurred by [Mr. Feldman] in advance of the final disposition of any matter only upon the receipt of an undertaking by or on behalf of [Mr. Feldman] to repay all amounts so advanced in the event that it shall ultimately be determined that [Mr. Feldman] is not entitled to be indemnified."  Mr. Feldman executed an undertaking, which RNI was authorized under its certificate of incorporation to accept "without reference to the financial ability of [Mr. Feldman] to make such repayment."  The Court previously entered an order authorizing and approving the post-petition advancement of defense costs to Mr. Feldman.

Mr. Feldman's undisputed right to pre-indemnification advancement of certain litigation related expenses is anything but contingent.  While it is subject to an undertaking to repay the advanced expenses in the event that it is determined that Mr. Feldman is not entitled to indemnification, the advancement itself is "not conditioned on a finding that the party seeking advancement has met any standard of conduct." *Majkowski*, 913 A.2d at 586.  Moreover, the Debtors have the authority (which they exercised) to honor Mr. Feldman's right to advancement "without reference to the financial ability of [Mr. Feldman] to make . . . repayment."

In the event that it is determined in the future that Mr. Feldman is not entitled to indemnification, Mr. Feldman will the lose the right to be reimbursed for all out of pocket expenses and losses caused by the underlying claim, including attorneys fees and expenses.  In addition, the Debtors will have the right to seek repayment of the advanced funds (itself a contingent claim) and Mr. Feldman will have a contractual duty to repay the advances – but Mr. Feldman or his representatives will still be in possession of the advanced funds.  The fact that the Debtors have a contingent and unliquidated claim against Mr. Feldman for return of the advanced funds to which Mr. Feldman may have little or no defense except insolvency is insufficient, as a matter of law, to render Mr. Feldman's claim for pre-indemnification advancement of litigation related expenses as contingent.  As Mr. Feldman has waived his right to indemnification for any losses incurred as a result of the underlying claims other than for reimbursement of attorneys' fees and expenses, Mr. Feldman's claim is not contingent in its entirety.[9]

Moreover, there is insufficient evidence before the Court to support a finding in this case that there is a possibility that the Plan Administrator may have a claim for return of some or all of the defense costs.  The only evidence in the record regarding Mr. Feldman's conduct is his own sworn testimony during his deposition taken by the Plan Administrator.  At his deposition, Mr. Feldman

---

[9] This is consistent with the Delaware Supreme Court's admonition that section 145 of the DGCL should be broadly interpreted to further the goals it was enacted to achieve. *Stifel Fin. Corp.,* 809 A. 2d at 561.

denied the truth of the SEC's allegations against him in the pending civil action.

The Plan Administrator offered no evidence indicating any wrongdoing on the

part of Mr. Feldman.  Although the Court infers from the SEC's allegations and

the pending grand jury investigation that Mr. Feldman may have engaged in

wrongdoing, that inference alone is insufficient evidence that Mr. Feldman failed

to act "in good faith and in a manner [he] reasonably believed to be in or not

opposed to the best interests of the corporation, and, with respect to any criminal

action or proceeding had no reasonable cause to believe [his] conduct was

unlawful."  Recalling that the Plan Administrator bears the burden of proof,

*Juniper Dev. Group v. Kahn (In re Hemingway Trans., Inc.)*, 993 F.2d 915, 925 (1st

Cir. 1993), there is insufficient evidence before the Court to support the Plan

Administrator's argument that Mr. Feldman's claim is contingent because he will

not be entitled to indemnification.

### (C)    The Debtors and Mr. Feldman are not co-liable.

Finally, the Plan Administrator argues that Mr. Feldman's claim should be

disallowed because the Debtors and the claimant are co-liable to the government

for the claimant's alleged wrongdoing.  The co-liability prong of the section

502(e)(1)(B) analysis "is to be interpreted to require a finding that the causes of

action in the underlying lawsuit assert claims upon which, if proven, the debtor

could be liable but for the automatic stay." *Wedtech I*, 85 B.R. at 290.  Co-liability

is determined on the basis of the substantive law of the underlying cause of

action. *Hemingway Transp.*, 993 F.2d at 923 (finding co-liability based upon

assignment of joint and several liability under CERCLA); *APCO Liquidating Trust*, ___ Bankr. LEXIS ___ at *13-15 (same).

There can be no question that, as of the Petition Date, the Debtors and Mr. Feldman were, at the very least, potentially co-liable to the SEC for certain violations of the Exchange Act.[10]  Nonetheless, shortly after the Petition Date, the SEC accepted RNI's offer of settlement.  Moreover, neither the SEC nor the DOJ filed a proof of claim in the Debtors' bankruptcy case prior to the government bar date, and no civil or criminal claim or penalty by neither the SEC nor the DOJ is mentioned in or provided for in the Plan.  Thus, Mr. Feldman argues that the co-liability prong is not satisfied because the failure of the SEC or the DOJ to file a proof of claim has eliminated even the theoretical possibility that the Debtors and Mr. Feldman will be co-liable to the government.

The Court disagrees.  The failure of the SEC or the DOJ to file a claim against the Debtors does not, in itself, alter the co-liability to the government of the Debtors and Mr. Feldman.  "As other courts have observed, 'section 502(e) does not require that a proof of claim be filed in the proceeding to be liable with the debtor.  Application of '[section 502(e)(1)(B)] is not premised on the actual filing of multiple claims but, rather, on the existence of such claims.'" *APCO Liquidating Trust*, ____ Bankr. LEXIS ____ at *17 (quoting *In re Lull Corp.*, 162 B.R.

---

[10] Because the criminal action that may be brought against Mr. Feldman would not be asserted by the United States in its status as a creditor, any indemnification claim relating to any such action is "not within the compass of section 502(e)(1)(B)." *Wedtech I*, 85 B.R. at 290.

234, 238 (Bankr. D. Minn. 1993) in turn quoting *In re Cottonwood Canyon Land Co.*,

146 B.R. 992, 997 (Bankr. D. Colo. 1992)).

Mr. Feldman further argues that, since he has waived his right to

indemnification for any losses incurred as a result of the underlying claims other

than for reimbursement of attorneys' fees and expenses, the co-liability prong is

not satisfied because neither the SEC nor the DOJ have a claim against the

Debtors for Mr. Feldman's defense costs.  In response, the Plan Administrator

cites to a number of cases that stand for the proposition that if there is co-liability

in the underlying action, then any amounts sought by way of indemnification,

including attorney's fees and expenses, "on account" of the underlying suit are

subject to disallowance under section 502(e)(1)(B). *See In re Wedtech Corp.*, 87 B.R.

279, 287 (Bankr. S.D.N.Y. 1988) ("*Wedtech II*"); *Sorenson v. The Drexel Burnham*

*Lambert Group Inc. (In re The Drexel Burnham Lambert Group Inc.)*, 146 B.R. 92, 97

(S.D.N.Y. 1992) ("*Drexel II*"); and *In re Drexel Burnham Lambert Group Inc.*, 148 B.R.

982, 989 (Bankr. S.D.N.Y. 1992) ("*Drexel III*").  This Court respectfully disagrees

with the holding on this issue in each of those cases.

The claimant in *Wedtech II* was the former accounting firm of the debtor,

which had been named as a defendant in a number of civil actions, including one

brought by the debtor, relating to its service as the debtor's accounting firm.

*Wedtech II*, 87 B.R. at 282.  The claimant filed a proof of claim against the debtor

"for reimbursement for any monies it ultimately pays as a result of any

judgment. "  *Id.*  In addition, the claimant asserted claims against the debtor for

fraud, misrepresentations and breach of contract.  *Id.*  The court engaged in an extensive analysis of the claims asserted by third parties against the claimant in determining that the debtor and the claimant were co-liable on virtually all of the claims asserted by third parties.  *Id.* at 284-7.  The court also noted that, although the claimant "fastens a variety of tags to its claims against [the debtor], the claims all seek reimbursement for monies to be expended by [the claimant] in its defense and in satisfying its liability to the [third parties]."  *Id.* at 287.  Importantly, the court in *Wedtech II* made this statement in the context of determining whether the claims were for reimbursement and not whether the claimant and the debtor were co-liable.  *Id.*  This is consistent with this Court's previous finding that Mr. Feldman's claim is for reimbursement regardless of whether it is for indemnification or advancement. *See* pp. 10 - 12, *supra*.  The court in *Wedtech II* goes on to hold, however, that the word reimbursement "encompasses whatever claims a co-debtor has which entitle him to be made whole for monies he had expended on account of a debt for which he and the debtor are both liable." *Id.*  In so ruling, the court in *Wedtech II* incorrectly collapsed the issues of reimbursement and liability.  The question of how one characterizes the damages being sought by a claimant, *e.g.*, reimbursement for actual losses vs. punitive damages, is separate from whether the debtor may be liable for those damages in the first instance.

The claimant in *Drexel II* was a former officer of the debtor, who had been named as a defendant in a civil action brought by the Federal Deposit Insurance

Corporation ("FDIC") relating to his employment.  *Drexel II*, 146 B.R. at 93.  The claimant filed a proof of claim seeking indemnity under the debtor's by–laws "for any liability judgment that might be entered against him and for defense costs incurred by him." *Id*.  The bankruptcy court disallowed the claims under section 502(e)(1)(B).  *Id*. at 94.  On appeal, the claimant argued that "even if claims for indemnification may be disallowed . . . the part of his proof of claim seeking indemnification for defense costs lies outside [section 502(e)(1)(B)] because it does not seek reimbursement for payment of an obligation jointly owed by the claimant and the debtor to a third party; the FDIC has no claim against [the debtor] for [the claimant's] defense costs." *Id*. at 97.  The district court disagreed, finding that the "claim for defense costs arises out of the underlying lawsuit against the claimant." *Id*.  The district court further held that the claimant's "attempt to segregate these cost-related claims from the underlying indemnity claims on the basis of co-liability ignores the fact that they are simply different facets of the same unified whole,"  both of which are "under the umbrella" of section 502(e)(1)(B). *Id*.   While the underlying lawsuit is the cause of the claimant incurring defense costs, liability on the claim for indemnification arises from the debtor's corporate governance documents and state law.  The district court's expansive interpretation of co-liability in *Drexel II* ignores the plain meaning of the statute and the fundamental distinction between indemnification for damages and indemnification and advancement for defense costs.

The claimants in *Drexel III* were co-underwriters with the debtor in a municipal bond issuance. *Drexel III*, 148 B. R. at 984-5. The claimants were defendants in various civil actions arising from the bond issuance and sought indemnification or reimbursement form the debtor under the terms of the agreements among the underwriters. *Id*. As in *Drexel II,* the claimants argued that the claims for indemnification of defense costs cannot be disallowed under section 502(e)(1)(B) because the claims are not liabilities for which the claimants are "liable with" the debtor. *Drexel III*, 148 B.R. at 988. The court held that "[i]f there is co-liability in the underlying action, then any amounts sought by way of indemnification or reimbursement 'on account' of this underlying suit are subject to § 502(e)(1)(B) objection." *Id*. at 989 (citing *Wedtech II*, 87 B.R. at 287). As discussed above, this reasoning is flawed. First, the court improperly collapses reimbursement and co-liability, relying on the holding in *Wedtech II* as to whether a claim is for reimbursement in support of finding the debtor is co-liable for the claim. Second, as in *Drexel II*, the court ignores the distinction between damages and defense costs.

Finally, a number of courts interpreting section 502(e)(1)(B) rely on the section's legislative history. *See, e.g., Drexel III*, 148 B. R. at 988; and *Wedtech I*, 85 B. R. at 289-90. As the statue is clear and unambiguous on its face there is no need to consult the legislative history. *United States v. Ron Pair Enter., Inc.*, 489 U.S. 235, 241, 109 S. Ct. 1026, 1030 (1989). If one were to do so, however, the purpose of the statute is simple -- "to prevent a double payment by the estate."

*Wedtech II*, 85 B.R. at 290.  *See also Dant & Russell, Inc. v. Burlington N. R.R. Co. (In re Dant & Russell, Inc.)*, 951 F.2d 246, 248 (9th Cir. 1991) ("The co-liability requirement – that the claimant be 'liable with' the debtor on the claim of a third party 'creditor' – illuminates the central purpose of § 502(e)(1)(B).").  There is no risk of the Debtors having to make a double payment for Mr. Feldman's defense costs.  Thus, overruling the Plan Administrator's objection is consistent with the primary purpose of section 502(e)(1)(B).

In addition, by disallowing contingent claims, courts have interpreted section 502(e)(1)(B) as "having purposes that reach beyond the risk to the debtor of double liability and are directed at the difficulty of administering and distributing the debtor's estate while ongoing contingent claims of the type covered by § 502(e)(1)(B) still exist. " *Drexel II*, 146 B.R. at 97.  Whether the more streamlined administration of the estate through the elimination of contingent claims is a purpose of the statute or merely a by product of its application is less than clear to this Court.  In any event, the issue is not raised in this case.  There is no business awaiting rehabilitation here.  The assets of the estate have been sold, a plan has been confirmed, and the vast majority of the estate's assets have been distributed -- all of which has occurred in less than 18 months.    Nonetheless, there is work to be done to fully administer the case.  Indeed, as set forth below, the Plan Administrator did not present any evidence that allowing Mr. Feldman to liquidate his claim will unduly delay the administration of this case. *See* pp. 30 - 32, *infra*.  But even if administering Mr. Feldman's claim was the sole remaining

issue in this bankruptcy, the Court would not be inclined to eviscerate Mr. Feldman's state law indemnification and advancement rights solely to serve the cause of efficient bankruptcy administration.

Mr. Feldman's claim for indemnification and advancement of his attorneys' fees and expenses arises from Delaware law and RNI's certificate of incorporation and by-laws. Neither the SEC nor the DOJ have a claim against the Debtors for Mr. Feldman's defense costs. Mr. Feldman and the Debtors can only be co-liable to the government on the merits of the underlying securities law claims. Thus, Mr. Feldman's claim for indemnification and advancement of his attorneys' fees and expenses is not subject to disallowance under section 502(e)(1)(B) of the Bankruptcy Code. *Vectrix Bus. Solutions*, 2005 Bankr. LEXIS at *10. In addition, although the claim is for reimbursement, it is not contingent. *See* pp. 12 - 23, *supra*. The Plan Administrator has failed to establish two of the three elements required for disallowance under section 502(e)(1)(B). Thus, the objection is overruled.

## II. The Court Is Neither Required Nor Inclined To Estimate Mr. Feldman's Claim.

As an alternative to disallowance, the Plan Administrator seeks to estimate the claim under section 502(c)(1) of the Bankruptcy Code because the fixing or liquidation of the claim would unduly delay the administration of the case. 11 U.S.C. § 502(c)(1). Estimation by the Court is mandatory, provided that the movant establishes that fixing or liquidation of the claim would unduly delay

the administration of the case. *In re Apex Oil Co.*, 107 B.R. 189, 192 (Bankr. E.D. Mo. 1989) ("This Court holds to its opinion that the duty to estimate is not mandatory until the court determines that liquidation of the claim outside of the bankruptcy court would unduly delay the bankruptcy proceeding."). Absent a finding of undue delay, "it is within this Court's sound discretion and not the obligation of this Court to estimate a claim." *Id.*

As set forth at length above, Mr. Feldman's claim is, in part, unliquidated. *See* pp. 12 - 16, *supra*. The Plan Administrator did not introduce any evidence at the hearing, however, in support of his contention that allowing Mr. Feldman to liquidate his claim through the incurrence of attorneys' fees and expenses in connection with the defense of his pending civil action and impending criminal action would unduly delay the administration of the case.

Rather, the Plan Administrator argues that the failure to estimate Mr. Feldman's claim will "cause the claim to become inflated." The Plan Administrator further argues that unless the Court lowers the amount of the $4.5 million reserve for Mr. Feldman's claim, the reserve "will act as a self-fulfilling prophecy and will become the amount of [Mr. Feldman's] defense costs." In other words, the Plan Administrator invokes section 502(c) to estimate Mr. Feldman's claim not to prevent undue delay but to lower the amount of Mr. Feldman's claim.

Mr. Feldman's rights to indemnification and advancement arise from the Debtors' corporate governance documents and state law. The Plan

Administrator's public policy argument against the establishment of those rights is irrelevant for purposes of determining whether to estimate Mr. Feldman's claim under section 502(c).  The purpose of section 502(c) is to prevent the administration of the debtor's estate from being held hostage by the fixing or liquidation of an unliquidated or contingent claim.  It is not a mechanism for reducing the amount of a debtor's liability.  The Court will not allow the Plan Administrator to use section 502(c) to reduce the amount of Mr. Feldman's claim for defense costs.

Since the Plan Administrator has failed to establish that the fixing or liquidation of Mr. Feldman's claim would unduly delay the administration of the case and improperly seeks to use section 502(c) to lower the amount of Mr. Feldman's claim, the Court is neither required nor inclined to estimate the claim.

### III.    The Motion In Limine Is Moot.

Prior to the hearing, the Plan Administrator filed a motion in limine to preclude the admission into evidence of the testimony of Mr. Feldman's attorney as to the amount of Mr. Feldman's claim, which the Plan Administrator argues is not admissible as opinion testimony by a lay witness under F.R.E. 701.  The Court allowed the testimony of Mr. Feldman's attorney at the hearing, subject to a ruling on the motion in limine.  The testimony of Mr. Feldman's attorney is only relevant to the extent that the Court is estimating Mr. Feldman's claim under section 502(c) of the Bankruptcy Code, which the Court is neither required nor inclined to do.  As the Court is not estimating the claim and, thus, not

considering the evidence, no party has a stake in the outcome of the motion in limine to exclude the testimony.    Thus, the motion in limine to exclude the evidence is moot. *County of Morris v. Nationalist Movement*, 273 F.2d 527, 533-4 (3d Cir. 2001) ("The mootness doctrine is centrally concerned with the court's ability to grant effective relief: 'If developments occur during the course of adjudication that eliminate a plaintiff's personal stake in the outcome of a suit or prevent a court from being able to grant the requested relief, the case must be dismissed as moot.'") (quoting *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 698-99 (3d Cir. 1996)). *See also* 15 MOORE'S FEDERAL PRACTICE § 101.93[2] (3d ed. 2006) (collecting cases).

### Conclusion

For a claim to be disallowed under section 502(e)(1)(B) of the Bankruptcy Code the claimant must assert a (i) contingent claim (ii) for reimbursement of a debt (iii) for which the debtors and the claimant are co-liable.    All three elements must be satisfied for the claim to be disallowed and the Plan Administrator has the burden of proof on each element.    While the Court finds that Mr. Feldman's claim is for reimbursement, the Plan Administrator has failed to establish that Mr. Feldman is asserting a contingent claim for which the Debtors and Mr. Feldman are co-liable.    Thus, Mr. Feldman's claim is not subject to disallowance under section 502(e)(1)(B) of the Bankruptcy Code.

Estimation of a claim under section 502(c) of the Bankruptcy Code is required where fixing or liquidation of the claim would unduly delay the

administration of the case.    Absent a finding of undue delay, it is within this Court's sound discretion and not the obligation of this Court to estimate a claim. Because the Plan Administrator failed to establish that the fixing or liquidation of Mr. Feldman's claim would unduly delay the administration of the case, the Court is neither required nor inclined to estimate the claim

Finally, because the Court is neither required nor inclined to estimate Mr. Feldman's claim, the motion in limine is moot.

An order will be issued.

CSS/cas